IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO


HEATHER WAGONER NELSON on behalf of
TYLER THOMAS NELSON, a minor child,

        Plaintiff,

 vs.                                                  No. CIV 02-1203 LFG

JO ANNE B. BARNHART,
Commissioner, Social Security Administration,

        Defendant.


**MEMORANDUM OPINION AND ORDER**

Plaintiff Heather Wagoner Nelson ("Nelson") invokes this Court's jurisdiction under 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Commissioner of Social Security ("Commissioner"). On August 26, 1999, Nelson applied for Supplemental Security Income benefits on behalf of her minor son Tyler Thomas Nelson ("Tyler"), alleging a disability due to hemophilia. The Commissioner determined that Tyler was not eligible for SSI. Nelson moves this Court for an order reversing the Commissioner's final decision and remanding for a rehearing [Doc. 8]. Both parties consented to exercise of jurisdiction by a Magistrate Judge [Doc. 4].

**Background**

Tyler was born on July 17, 1992 and was 8 years and 11 months old at the time of the administrative hearing in this case. He has no employment history. Nelson alleges that Tyler is disabled with hemophilia and challenges the Commissioner's finding that he does not meet the Listing at 107.08 for "inherited coagulation disorder."

Nelson's application was denied at the initial and reconsideration stages, and she sought timely review from an Administrative Law Judge ("ALJ"). An administrative hearing was held in Albuquerque, New Mexico on June 20, 2001. Tyler was present, accompanied by Nelson and their attorney. In a decision dated March 20, 2002, ALJ Carol A. Connor found that Tyler was not disabled within the meaning of the Social Security Act and denied the benefit request. Nelson challenged this determination to the Appeals Council which, in turn, denied her request for review on August 7, 2002. This appeal followed.

### **Standards for Determining Disability When Claimant is a Child**

When a claimant is under the age of 18, he is considered disabled if he has a medically determinable physical or mental impairment which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(C).

A sequential three-step process governs the ALJ's determination of whether a child is disabled within the meaning of the Act. At Step One, the ALJ must determine whether the child was engaged in substantial gainful activity; if so, he is not disabled. If he is not engaged in substantial gainful activity, the ALJ goes on to Step Two and determines whether the child has a severe impairment. If not, he is found not disabled. If he does have a severe impairment, the ALJ goes on to Step Three and determines whether the impairment meets, medically equals, or functionally equals an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the "Listings"). If a Listing is met or equaled, the child is deemed disabled. Brown v. Callahan, 120 F.3d 1133, 1135 (10th Cir. 1997); 20 C.F.R. § 416.924 (2003).

In this case, the ALJ made her decision at Step Three of the analysis. She considered Listing

107.08 (inherited coagulation disorder), as well as Listing 112.05 (mental retardation), and determined that Tyler's impairments, singly or in combination, do not meet or functionally equal the severity of any disorder set forth in the Listings. Nelson does not challenge the ALJ's finding with respect to Listing 112.05, but argues that her finding on hemophilia is not supported by substantial record evidence.

## Standard of Review and Allegations of Error

On appeal, the Court's review of the Commissioner's determination is limited. Hamilton v. Secretary of Health & Human Servs., 961 F.2d 1495, 1497 (10th Cir. 1992). The Court's function is to consider whether the Commissioner's final decision is supported by substantial evidence, and whether the Commissioner used the correct legal standards. Glenn v. Shalala, 21 F.3d 983 (10th Cir. 1994). To be substantial, evidence must be relevant and sufficient for a reasonable mind to accept it as adequate to support a conclusion; it must be more than a mere scintilla, but it need not be a preponderance. Trimiar v. Sullivan, 966 F.2d 1326, 1329 (10th Cir. 1992); Muse v. Sullivan, 925 F.2d 785, 789 (5th Cir. 1991). In Clifton v. Chater, 79 F.3d 1007, 1009-10 (10th Cir. 1996), the Tenth Circuit described, for purposes of judicial review, what the record should show:

> The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence. Rather, in addition to discussing the evidence supporting his decision, the ALJ must also discuss the uncontroverted evidence he chooses not to rely upon, as well as the significantly probative evidence he rejects. (citations omitted).

If supported by substantial evidence, the decision of the Commissioner is conclusive and must be affirmed. The Court cannot re-weigh the evidence or substitute its judgment for that of the Commissioner. Hargis v. Sullivan, 945 F.2d 1482, 1486 (10th Cir. 1991).

3

Nelson claims that the ALJ erred in her finding at Step Three that Tyler does not meet or equal Listing 107.08 (20 C.F.R. Pt. 404, Subpt. P, App. 1, Pt. B, § 107.08) for "inherited coagulation disorder."

### **Discussion**

Nelson contends that Tyler meets the Listing for "inherited coagulation disorder," in that he has been diagnosed with Hemophilia B. Hemophilia B is a hereditary predisposition to abnormal bleeding due to a deficiency of Coagulation Factor 9, which is a substance in the blood essential to the clotting process.[1] To satisfy Listing 107.08 for "inherited coagulation disorder," a child must demonstrate: "A. Repeated spontaneous or inappropriate bleeding; or B. Hemarthrosis with joint deformity." Nelson asserts that Tyler satisfies Part A, in that he has "repeated spontaneous or inappropriate bleeding."

The record, which is rather sparse, indicates the following:

Nelson states in her various filings with the Social Security Administration that Tyler's hemophilia condition will require life-long medical attention for monitoring, transfusions, and care. She says his hemophilia affects his joints which "could" cause problems with movement (Tr. 33, 39), and she states further that the hemophilia limits his activities (Tr.39, 56) and that it causes bruising as well as inflammation in the joints. (Tr. 56). She states that Tyler cannot participate in contact sports because of his condition, but that he rides his scooter and "has played T-ball and does well." (Tr. 73, 160-61, 164-65). Nelson reported in August 1999 that Tyler was not taking any medication, but that he had to have Factor 9 coagulant on hand, in case it was needed.

At the administrative hearing, Nelson testified that she first became aware of Tyler's

---

[1]Dorland's Illustrated Medical Dictionary (26th ed.1981), at 373, 484, 595, 596.

hemophilia when her younger son, who was born in June 1999, had a bleeding incident when he was two weeks old. Because of this, the doctors ran a "level check" on all three of her sons, and Tyler was found to have moderate hemophilia. (Tr. 160). She also said that, because of his condition, he gets easily frustrated and has had some emotional and behavioral problems when he can't do the things his peers are able to do. (Tr. 161-63). Tyler sees his hematologist, Dr. Matthews, twice a year and as needed (Tr. 150), and Nelson brings him to University Hospital periodically for "special level checks." (Tr. 151). Tyler was involved in an accident involving a four-wheel drive vehicle in January 2000, which required a three-hour hospital visit and an infusion of coagulation factors, but since that time there have no major illnesses or other critical episodes. (Tr. 151-52).

Nelson further testified at the hearing that Tyler has frequent nosebleeds, on average two per week, the longest one lasting about 5 minutes, and that he has had these nosebleeds all his life. (Tr. 163, 172, 174-75). Tyler has not received any medical treatment for his nosebleeds, as Nelson stated she can manage them herself. (Tr. 172). She said that Tyler also bruises easily and has troubling healing, and the bruises are her primary concern, rather than the nosebleeds. (Tr. 164, 172-73).

Dr. George Dixon, an orthopedic specialist, testified at the administrative hearing as a medical expert. He stated that there was nothing seriously abnormal in Tyler's growth pattern, and he gave his opinion that Tyler does not meet or equal any of the Listings. (Tr. 170). He described the frequent nosebleeds as "sort of uncommon," and on cross-examination, he said it would be "inappropriate" or "abnormal" to have two or three nosebleeds per week. (Tr. 171, 176).

Plaintiff argues that this statement by Dr. Dixon supports a finding that Tyler meets Listing 107.08, in that frequent nosebleeds in a child who has been diagnosed with hemophilia demonstrate that he meets this Listing for "Inherited coagulation disorder . . . [w]ith . . . [r]epeated spontaneous

5

or inappropriate bleeding."

Plaintiff also argues that Dr. Dixon testified that bleeding and scarring, as described by Tyler's mother, would be inappropriate. However, the record is not clear on this point. Dr. Dixon's testimony (Tr. 176) may be taken to mean that bleeding into a joint would be seriously inappropriate, but that the medical record does not indicate that Tyler has ever experienced bleeding into a joint.

Defendant argues that Plaintiff's contention, that frequent nosebleeds and bruising are sufficient to meet Listing 107.08, ignores the statutory requirement that every childhood impairment that is alleged to cause disability must be "marked" and "severe." The statute does requires a showing that the child's impairment "results in marked and severe functional limitations." 42 U.S.C. § 1382c(a)(3)(C). However, an impairment is *presumed* to cause marked and severe functional limitations, if it meets or equals the Listing. *See*, 20 C.F.R. § 416.924(d):

> An impairment(s) causes marked and severe functional limitations if it meets or medically equals the severity of a set of criteria for an impairment in the listings, or if it functionally equals the listings.
>   (1) Therefore, if you have an impairment(s) that meets or medically equals the requirements of a listing or that functionally equals the listings, and that meets the duration requirement, we will find you disabled.

*See also*, 20 C.F.R. § 416.924b(a)(2): "The listings describe impairments that we consider of such significance that they are presumed to cause marked and severe functional limitations."

Thus, the Court rejects the argument that Plaintiff must make some severity showing in addition to a showing that the child's condition meets or equals a particular Listing. The issue in this case is whether the record supports the ALJ's determination that Tyler did not meet or equal Listing 107.08. The Court finds that it does.

Nelson argues that Dr. Dixon testified, on cross examination, that Tyler's nosebleeds and

bruising were "inappropriate," and that this is sufficient to establish a disability, in that it satisfies the Listing's requirement of "repeated spontaneous or inappropriate bleeding." However, Dr. Dixon specifically testified, under questioning by the ALJ, that in his opinion Tyler's condition did not meet or equal the requirements of any Listing, and the ALJ cited this testimony in her finding on this issue. (Tr. 14).

Although Dr. Dixon's testimony may have been somewhat internally contradictory, the Court does not reweigh the facts on appeal, but only inquires whether there is record support for the ALJ's finding. Hargis v. Sullivan, *supra*. The ALJ considered not only Dr. Dixon's testimony, but other record evidence as well, and this evidence supports the finding that Tyler is not disabled within the meaning of the law. The record shows as follows:

In September 1999, Tyler was treated at University Hospital for a red and inflamed mucosa in the nose. The medical record states that he has Hemophilia B and experiences frequent nosebleeds, *i.e.*, about three or four per month. He had no obvious joint deformities at that time and had a good range of motion in all extremities. He was diagnosed with mild Factor 9 deficiency and allergic rhinitis. (Tr. 98).

In November 1999, Tyler was examined by Dr. Robert L. McGrath, a pediatrician, for purposes of disability determination. Dr. McGrath reported that Tyler has Hemophilia B, but that "[h]e has had no problems in the past with bleeding or traumas needing factor transfusion. He is an active healthy boy in general." The examination revealed a healthy, normal boy with the exception of the hemophilia diagnosis. (Tr. 118).

In January 2000, Tyler's first grade teacher Shannon Morris filled out a Teacher Questionnaire, in which she reported on his various behaviors. She noted that he has hemophilia, but

7

that this did not present any classroom problems. (Tr. 91-92).

In June 2000, Tyler was involved in an accident while driving a four-wheel vehicle. He hit his head when the four-wheeler flipped over, but he did not lose consciousness. He was taken to the emergency room, x-rayed, given a CT scan, and given an intravenous infusion of a coagulation factor. (Tr. 140-46). This is the only time Tyler required an infusion. The hospital stay lasted approximately three or four hours. (Tr. 150-51).

Nelson testified at the hearing that she had never reported the nosebleeds to Tyler's hematologist. She did discuss them with Tyler's pediatrician, Dr. Garretson, but stated "I didn't feel that it was a problem and neither did he . . . It wasn't a concern. It hasn't been a concern." (Tr. 172-73). Tyler has never seen a doctor for his nosebleeds. (Id.). The only mention of nosebleeds in Tyler's medical records (which, as noted above, are quite sparse) is the statement that Tyler has nosebleeds 3 or 4 times per month. (Tr. 98).

The ALJ found Nelson's testimony to "generally" credible but held that it did not support a finding of disability. There is nothing inconsistent in this ruling. The ALJ, having found that Tyler did not meet the requirements of Listing 107.08 or 112.05, then went on to determine that his impairments, singly or in combination, did not "functionally equal" any Listing. (Tr. 14). Nelson does not challenge this analysis, and the Court finds no fault with it. In sum, the Court finds that the ALJ's decision of no disability is amply supported by the record.

## **Order**

IT IS THEREFORE ORDERED that Plaintiff's Motion to Reverse or Remand [Doc. 8] is denied, and the case is dismissed with prejudice.

*Lorenzo F. Garcia*
Lorenzo F. Garcia
Chief United States Magistrate Judge